IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA SALERNO                    :
           Plaintiff         :
                               :
     v.                    :         3:CV-07-2100
                             :         (JUDGE VANASKIE)
LEONARD GALLI, EXETER BOROUGH,  :
JOHN MCNEILL, JOHN DOES 1 - 5    :
           Defendants     :

MEMORANDUM

Plaintiff, Linda Salerno, filed this action against Exeter Borough Police Sergeant Leonard Galli, Exeter Borough Police Chief John McNeill, and Exeter Borough, alleging that Sergeant Galli violated her constitutional rights when he entered her home without permission in the early morning hours of November 18, 2006. Plaintiff's complaint included three causes of action pursuant to 42 U.S.C. § 1983, a state-law intentional infliction of emotional distress claim, and a trespass claim. The parties have filed motions for partial summary judgment. Plaintiff's intentional infliction of emotional distress claim will be dismissed as she admits the claim is not cognizable. Furthermore, as there is an explicit constitutional text governing Plaintiff's Fourteenth Amendment due process claims, the Fourteenth Amendment claims in Counts I and II will be dismissed. Because there are disputes as to material facts, summary judgment as to the remaining claims will be denied.

I. Background

On November 18, 2006, shortly after midnight, Officer Michael Fuller of the Exeter

Borough Police Department responded to a call about a possible sexual assault. Following

several interviews, Office Fuller determined that a sex crime had been committed against a

minor. (Plaintiff's Statement of Undisputed Material Facts, ("PSUMF"), Dkt. 28, at ¶ 1.)[1] He

contacted his superior, Sergeant Galli, who interviewed the victim and her family at the Exeter

Borough police station. (Id. at ¶ 2.) "The family gave statements to the effect that Angelo

Salerno, Jr., the adult son of the plaintiff Linda Salerno, had committed a crime." (Id. at ¶ 2.)

"Angelo Jr. was registered as a sexually violent predator . . . stemming from a prior conviction

on May 31, 2002." (Defendants' Statement of Undisputed Material Fact ("DSUMF"), Dkt. 19, at

¶ 4.)

     Officer Fuller and Sergeant Galli began to prepare "paperwork to obtain a warrant for the

arrest of Angelo Salerno, Jr." (PSUMF, Dkt. 28, at ¶ 3.) Some time after 2:00 a.m., the officers

left the police station to find and question Angelo Salerno, Jr. (Id. at ¶ 4; DSUMF, Dkt. 19, at ¶

6.) The officers did not have a search or arrest warrant. (PSUMF, Dkt. 28, at ¶ 4.) The

officers went to the Salerno residence, where Angelo Salerno, Jr. lived with his parents, and

knocked on the front door, but no one answered. (Id.) The officers left and returned to the

---

    [1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

2

Exeter Borough police station.  (Id.)

Upon return to the Exeter Borough police station, Sergeant Galli contacted the district attorney's office and Magisterial District Judge Carmody.  (Id. at ¶ 5.)  Officer Fuller indicated that Judge Carmody would not issue a search warrant for the Salerno residence, but that he would come out in the morning to sign an arrest warrant.  (Fuller Dep., Dkt. 28-2, at 7-8.)  At approximately 3:45 a.m., still without a search or arrest warrant, Sergeant Galli and Officer Fuller returned to the Salerno residence.  (PSUMF, Dkt. 28, at ¶ 8.)  Because no one had answered the front door during the earlier visit, they tried the back door.  (Id. at ¶ 8.)

The back of the Salerno home has an enclosed porch.  In order to enter onto the porch, one must open a screen door and a heavier door.  (Id. at ¶ 9; DSUMF, Dkt. 19, at ¶ 11.)  On the night in question, the doors to the enclosed porch were closed but unlocked.  (PSUMF, Dkt. 28, at ¶ 9.)

The Salerno residence is owned by Plaintiff's husband, Angelo Salerno, Sr., and Plaintiff's brother-in-law, Roger Salerno.  (Id. at ¶ 10.)  Roger Salerno resides on the first floor of the residence and Plaintiff, her husband, and her son, live on the second floor.  After entering the back porch, there is a separate entrance to each home.  Roger Salerno's door was to the right and Plaintiff's door, which opened up to a staircase,  was directly in front of the door leading into the enclosed porch.

Officer Fuller and Sergeant Galli approached the back porch and, without knocking or

3

obtaining consent to enter the enclosed porch, opened the unlocked screen door, opened the unlocked heavier door that was flush to the screen door, and entered the enclosed porch. There were no lights illuminating the porch area when the officers entered, but Officer Fuller was illuminating the area with a flashlight. (DSUMF, Dkt. 19, at ¶ 13; Fuller Dep., Dkt. 21-5, at 39.)

The parties dispute what happened after Sergeant Galli entered the enclosed porch. In this regard, it is not clear whether the door to Plaintiff's portion of the home was ajar or closed, whether she invited the officers up the stairs or they proceeded up the stairs without an invitation, whether Plaintiff was standing or sitting when the officers arrived, and whether Plaintiff's husband was present during the incident.

The parties, however, do agree that at some point, "[t]he Officers told Mrs. Salerno that they were looking for her son Angelo Jr.," that "Mrs. Salerno indicated he was not there," and that Plaintiff responded "go ahead" when the officers asked if they could search Plaintiff's residence. (DSUMF, Dkt. 19, at ¶¶ 15, 16; Pl. Dep., Dkt. 34, at 122.) Not finding Angelo Salerno, Jr., the officers left the home.[2]

It is also undisputed that the Exeter Borough Police Department had no written policies of any kind at the time of this incident. (Pl. Counter Statement of Fact ("PCSUF"), Dkt. 25, at ¶

---

[2] Angelo Salerno, Jr., turned himself in on the morning of November 18, 2006, and "subsequently plead guilty to three (3) counts of indecent assault, one (1) count of unlawful contact with a minor and one (1) count of corruption of a minor." (DSUMF, Dkt. 19, at ¶ 19.)

25.)  The parties also agree that Sergeant Galli had been sued in the past for civil rights violations in his capacity as an Exeter Borough police officer and that each of those lawsuits settled without any liability determination.  (Id. at ¶ 20.)

Chief McNeill was Galli's superior when those other suits were brought.  (Id. at ¶ 21.) Neither Chief McNeill nor anyone else from Exeter Borough undertook any investigation in connection with the incidents underlying the prior civil rights lawsuits.  (Id. at ¶ 22.)  "Neither defendant McNeill nor defendant Exeter Borough even investigated whether Galli did anything wrong in connection with the facts underlying the present case, despite receiving a letter indicating that Linda Salerno intended to sue them because of Galli's entry into her home."  (Id. at ¶ 23.)

After receiving Plaintiff's letter, Chief McNeill reviewed the police report regarding the incident and noted that the report omitted any mention of the entry into the Salerno home, or any conversations with Plaintiff.  (Id. at ¶ 24.)  "Entry into a home and conversations with potential witnesses or family members is the type of thing that should be written into a police report."  (Id.)  Even though the information is supposed to be included in the police reports, neither Chief McNeill nor Exeter Borough disciplined Sergeant Galli or Officer Fuller for failing to document the entry.  (Id.)

Chief McNeill and Sergeant Galli both work a second job as security officers at the Woodlands Resort.  During his deposition, Sergeant Galli testified that he does not have a title,

but that he works security.  (Galli Dep., Dkt. 34, at 97.)  Sergeant Galli indicated that he does not make hiring or firing decisions, but that he is in charge of security in some capacity.  (Id.) He indicated that he would not be considered a supervisor, but that he has been there the longest.  (Id.)  Sergeant Galli indicated that Chief McNeill obtained his position at Woodlands on Galli's recommendation, as did most of the security.  (Id. at 99.)  At the same time, however, Sergeant Galli indicated that he has no input into hiring or firing.[3]  (Id.)

On November 16, 2007, Plaintiff filed a five count complaint against Sergeant Galli, Exeter Borough, Chief McNeill, and John Does one through five, unidentified individuals believed to be employees of the West Pittston Police Department.  (Comp., Dkt. 1.)  Plaintiff presented a claim of trespass, intentional infliction of emotional distress, and three claims alleging violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.  (Id.)  Fact discovery closed on November 1, 2008.  (Aug. 29, 2008 Order, Dkt. 17.)  On January 5, 2009, Defendants filed a Motion for Partial Summary Judgment.  (Dkt. 18.)  On January 20, 2009, Plaintiff filed a Cross-Motion for Partial Summary Judgment.  (Dkt. 26.)  The motions are ripe

---

[3] There is a discrepancy regarding whether Sergeant Galli is a supervisor or has hiring and firing privileges.  In a November 30, 2005 deposition in a case captioned Slavoski v. Fernandes, 3:05cv646, Sergeant Galli indicated that he worked at the Woodlands and was "[i]n charge of security."  (Galli 2005 Dep., Dkt. 25-3, at 3.)  Sergeant Galli had indicated that he maintained "security for all of the Woodlands properties," and that although he does not hire, he supervises other security officers and sometimes recommends who should get hired and fired. (Id. at 4.)  Sergeant Galli also indicated in 2005 that he was in charge of Chief McNeill at the Woodlands and that he recommended Chief McNeill for the job.  (Id. at 5.)

for review.

II. DISCUSSION

A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds, Hazen Paper Co. v. Biggins, 570 U.S. 604 (1993). Once the moving party satisfies its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported

7

motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party" bears the burden of proof at trial. Celotex, 477 U.S. at 322.

B. Fourteenth Amendment

Counts I and II of Plaintiff's Complaint allege that Defendants' acts "constituted a deprivation of plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution." (Comp., Dkt. 1, at ¶¶ 31, 35.) Defendants seek to dismiss the Fourteenth Amendment claims in Count I and Count II, asserting that Defendants' alleged illegal search and entry is governed by the Fourth Amendment, and consequently, the claim may not be brought as a broader due process claim.

"The Fourth Amendment, as incorporated into the Fourteenth Amendment, applies to the conduct of state officials." Karnes v. Skrutski, 62 F.3d 485, 488 n.1 (3d Cir. 1995). In Albright v. Oliver, 510 U.S. 266, 272 (1994), the Court held that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive

8

due process, must be the guide for analyzing these claims."

In O'Malley v. Lukowich, No. 3:08cv0680, 2008 WL 4861477, at *6 (M.D. Pa. Nov. 7, 2008), a section 1983 search and seizure case, the Hon. A. Richard Caputo held that the Fourth Amendment "provides an explicit textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced." The court found that the same principles applied to the plaintiff's Fourteenth Amendment procedural due process claims, as the "claims based on principles of search and seizure are properly brought under the Fourth Amendment, not the Fourteenth Amendment." Id. at *7.

"'Claims of unreasonable search and seizure are . . . governed by the explicit constitutional text in the Fourth Amendment and may not therefore, [be] brought as claims for violation of the right to substantive due process.'" McDonald v. Darby Borough, Civ. A. No. 07-4588, 2008 WL 4461912, at *6 (E.D. Pa. Oct. 3, 2008) (citing Piskanin v. Hammer, Civ. A. No. 04-1321, 2005 WL 3071760 (E.D. Pa. Nov. 14, 2005)). The Third Circuit has held "that Albright commands that claims governed by explicit constitutional text may not be grounded in substantive due process." Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998).[4]

---

[4] This Court's decision in Yagloski v. Christian, No. 3:02cv1603 (M.D. Pa. Dec. 12, 2002), cited to by Plaintiff, is clearly distinguishable from the case at hand. (Dkt. 24-6.) In Yagloski this Court found that whether a claim "is, in the end, more proper under the Fourth Amendment rather than the Fourteenth Amendment, should not be decided on a motion to dismiss." Id. at 2. Here, discovery has been completed and Plaintiff has failed to present a claim that merits analysis under Fourteenth Amendment jurisprudence. See O'Malley, 2008 WL 4861477, at *6.

Plaintiff does not argue that her claims should be governed by the substantive conception of due process. Nor does she rely upon the procedural component of the due process clause. Instead, she contends that her reliance on the Fourteenth Amendment due process clause is appropriate because the Fourth Amendment applies in this case as a result of the "incorporation doctrine," by which the substantive protections of the Fourth Amendment apply to actions taken under color of state law, as opposed to federal law. See Duncan v. State of Louisiana, 391 U.S. 145, 147-48 (1968).

Plaintiff's observation is both correct and irrelevant. The fact of the matter is that her claims fall within the purview of Fourth Amendment jurisprudence, and it is appropriate to limit her claims to that context. Accordingly, Defendants' Motion for Summary Judgment seeking to dismiss Plaintiff's Fourteenth Amendment due process claims will be granted. Plaintiff's claims are grounded in the Fourth Amendment, and cloaking those claims in due process garb is misleading, confusing, and redundant. See McDonald, 2008 WL 4461912, at *6; O'Malley, 2008 WL 4861477, at *6.

C. Count I - Illegal Entry Pursuant to 42 U.S.C. § 1983

Plaintiff moves for summary judgment on Count I, alleging that there is no dispute that Defendant Galli improperly entered Plaintiff's porch. The parties dispute whether the "enclosed porch" is part of the home or simply a vestibule before entering either apartment. In this regard, Plaintiff's deposition testimony refers to the residence both as a single dwelling and as an

apartment.

The determination of the location of the "threshold" of a residence is a factual matter that affects whether an illegal entry has occurred. The Supreme Court has held that "the Fourth Amendment has drawn a firm line at the entrance to the house," and "[a]bsent exigent circumstances, that threshold may not reasonable be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980).

When "the threshold is in dispute and the home 'has an enclosed porch, vestibule, or entryway attached to the home,' the court must gauge the reasonableness of the law enforcement officers' entry into the home by 'giving due consideration to the particular characteristics of the home in question.'" United States v. Wilson, No. 08-cr-2020, 2009 WL 905709, at *5 (N.D. Ia. Mar. 30, 2009). In Wilson, the court held that an officer violated the defendant's Fourth Amendment rights when he entered the defendant's mudroom. Id. The court found "that the mudroom was part of Defendant's home and hence the storm door was the home's threshold." Id. In coming to this conclusion, the court noted that the mudroom shares the same foundation as the home, the siding is identical, and the glass windows of the room have curtains. Id.

Conversely, treating the porch as a vestibule before entering two separate apartments could yield a different result. "The Fourth Amendment protection accorded to an apartment dweller's home does not extend to the lobby of his apartment building . . . or the area just inside

11

a hall door that was meant to lock but did not, . . . or the hallway just outside his apartment door." United States v. Penco, 612 F.2d 19, 24-25 (2d Cir. 1979) (citations omitted); Redin v. Torres, 14 F.3d 44, 44 (1st Cir. 1993) (an officer's entry into a common vestibule does not violate the federal constitution); United States v. Porter, 281 F. App'x 106, 109 (3d Cir. 2008) (Fourth Amendment protections not implicated in the hallways or common areas of a building with three separate residences).

During her deposition, Plaintiff describes her residence as an apartment. (Pl. Dep., Dkt. 34, at 122, 123, 128.) At the same time, she also refers to the residence as a house, and her brother-in-law (the property's co-owner along with Plaintiff's husband), adamantly claims that the residence is not an apartment, but one single dwelling. (R. Salerno Dep., Dkt. 21-10, at 17, 24, 30.)

Precluding a complete analysis of the matter is the absence of such evidence as separate or common utility bills, descriptions of the appearance of the porch from outside, or whether the porch doors have locks. Accordingly, as there is a dispute as to whether the enclosed porch is a vestibule used before entering either apartment, or an enclosed porch that is treated as part of a single dwelling, summary judgment is not appropriate.[5]

_____

[5] Also confounding analysis is the parties' failure to address the significance of Sergeant Galli's entry through the door that led to a stairway to the part of the building occupied by Plaintiff. Even if entry into the enclosed porch did not violate the Fourth Amendment, entry into the second entranceway without consent may have violated that constitutional provision.

D.  Count II - Illegal Search Pursuant to 42 U.S.C. § 1983

Count II of Plaintiff's Complaint alleges violation of her Fourth Amendment right to be free from illegal search.  Defendants have moved for summary judgment on the ground that Plaintiff consented to the search of her home.  Plaintiff argues that although she consented, her consent was not voluntary.

"In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of . . . the possibly vulnerable subjective state of the person who consents." Schneckloth v. Bustamonte, 412 U.S. 218, 229 (1973).  Plaintiff's "personal characteristics are highly relevant to the totality of the circumstances analysis as to whether [her] consent was voluntary." United States v. Parson, 599 F. Supp. 2d 592, 607 (W.D. Pa. 2009).  Factors to be considered in determining whether the consent was voluntary include characteristics of the person consenting (age, maturity, education, intelligence and experience), and the conditions under which the consent to search were given, including the officer's conduct, the number of officers present, and the duration, location, and time of the encounter. United States v. Hernandez, 76 F. Supp. 2d 578, 581 (E.D. Pa. 1999) (citing United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996)).

Plaintiff was 50 years old at the time of the incident.  (Pl. Dep. , Dkt. 34, at 119.)  Two months prior to the incident she had open-heart surgery.  (Id.)  On the morning of the incident, Plaintiff was asleep in the living room on a recliner when she saw light shining up the stairs.

(Id. at 122.)  She was hooked to a "VAC Machine" which she had to unplug before she was able to get up.  (Id. at 122, 127.)  By the time she got up Sergeant Galli had startled her and was standing in her hallway.  (Id. at 122.)

Plaintiff testified that she felt very vulnerable during the incident: "I was in my chair in the privacy of my own home in the middle of the night, early morning.  I'm in a nightgown with a hose running up underneath.  I just felt very violated."[6]  (Id. at 130.)  Plaintiff testified that she did not feel threatened, but was startled that the officers were in her home already.  (Id.)

Although there is no dispute that Plaintiff gave Sergeant Galli permission to search her residence, there are facts that could support a finding that Plaintiff's consent was not voluntary.  The factual dispute as to whether Galli was invited into Plaintiff's home, or simply entered and was granted permission to search after he had barged into the home, affects the validity of Plaintiff's consent.  The conditions under which the consent to search were given, including the time of day, location, and Plaintiff's physical condition, could support a jury finding that Plaintiff's consent was not voluntary.  See Hernandez, 76 F. Supp. 2d at 581.  Accordingly, Defendant's

---

[6] Plaintiff also testified:

It scared me. . . . I felt violated.  I was comfortable in my own home. . . .  It was very upsetting.  And even my attire, I was in a short nightgown with a tube running up to my chest and attached to my leg and no underwear on sitting in a reclining chair.  It's kind of embarrassing.

(Id. at 132.)

14

Motion for Summary Judgment as to Count II of Plaintiff's Complaint will be denied.[7]

E. Qualified Immunity

Defendant Galli argues that qualified immunity precludes liability for the Fourth Amendment claims. "Qualified immunity shields government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Manigault v. King, No. 08-3810, 2009 WL 2008428, at *2 (3d Cir. 2009). Courts apply a two-step test to the defense of qualified immunity: "whether the Officers' acts violated a constitutional or statutory right, and if they did, whether that right was clearly established at the time of the violation." Miezwa v. United States, 282 F. App'x 973, 978 (3d Cir. 2008). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002).

"The right to be secure in one's own home against unreasonable searches and seizures is a clearly established right." Perez v. Borough of Berwick, No. 4:07cv2291, 2009 WL 1139642, at *6 (M.D. Pa. Apr. 28, 2009) (citing Payton, 445 U.S. 573 (1980)). "The time of a police search of an occupied family home may be a significant factor in determining whether, in

---

[7] It must be noted that if the entry into the home was wrongful, the consent to search may have been vitiated by the illegal entry. See, e.g., United States v. Oaxaca, 233 F.3d 1154, 1158 (9th Cir. 2000). The factual disputes with respect to the initial entry into Plaintiff's home obviates consideration of this issue at this time.

a Fourth Amendment sense, the search is 'unreasonable.'" United States ex rel. Boyance v. Myers, 398 F.2d 896, 897 (3d Cir. 1968).

Drawing all reasonable inferences in favor of the Plaintiff, a reasonable officer could not infer that entering a suspect's home in the early hours of the morning, without a search or arrest warrant, without exigent circumstances, and without voluntary consent, is objectively reasonable. As there are genuine disputes of fact material to the question of whether Sergeant Galli's entry into the porch and then into the home violated the Fourth Amendment, and whether Plaintiff voluntarily consented to the search following his entry, Sergeant Galli is not entitled to summary judgment on the defense of qualified immunity.

E. Count III - Violation of 42 U.S.C. § 1983 Based on Policies and Customs

Count III of Plaintiff's Complaint alleges a violation of her rights pursuant to section 1983 premised on Exeter Borough and John McNeill's maintenance of policies and customs that permitted the violation of citizens' constitutional rights. Government liability under 42 U.S.C. § 1983 "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Liability cannot be maintained pursuant to the respondeat superior doctrine. "Thus, municipality liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Id. (quoting Monell v. New York City Dep.'t of Social Services, 436 U.S. 658

(1978)).

A policy requires a decision maker to establish an official proclamation, policy or edict. Id.  A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id.  "Custom may be established by proof of knowledge and acquiescence." Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989); Hernandez v. Borough of Palisades Park Police Dept., 58 F. App'x 909, 912 (3d Cir. 2003) ("To show custom, the plaintiff may adduce evidence that a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk.").  "[W]hen a § 1983 civil rights claim is made, the extent of the supervisors' knowledge of and participation in the acts of their subordinates determines the scope of the municipality's liability." Scouler v. Craig, 116 F.R.D. 494, 497 (D.N.J. 1987).

"Generally notice is established through a pattern of known prior constitutional violations." Hernandez, 58 F. App'x at 913 (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (holding that a pattern of written complaints of violence against an officer was sufficient for a reasonable jury to conclude the policymaker knew or should have known of violations); Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) (policymakers must be aware of similar unlawful conduct in the past and fail to take action to prevent future violations)).  "A reasonable fact-finder may conclude that a Police Chief has constructive

17

knowledge of constitutional violations where they are repeatedly reported in writing to the Police Department." Id.

In Bielevicz v. Dubinon, involving a false arrest claim, the Third Circuit held that if "the City is shown to have tolerated known misconduct by police officers, the issue [of] whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs unlawfully in this instance is a question of fact for the jury." 915 F.2d at 851. The Third Circuit went on to find "it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." Id.

Knowledge of allegations of Galli's constitutional violations and the extent of the municipality's efforts to investigate the claims against him are pertinent to Plaintiff's contentions that the municipality had a custom of allowing officers to perform illegal searches. The fact that prior litigation ended with settlements with no admission of liability is not, contrary to Defendants' suggestion, controlling. "Whether or not the [prior] claims had validity, the very assertion of a number of such claims put the [Borough] on notice that there was a possibility that" Sergeant Galli may be violating citizen's constitutional rights. See Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 328 (2d Cir. 1986). The Borough's "knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims" is pertinent to Plaintiff's contention that the Borough had a custom of inadequate supervision of officers. See id. Furthermore, the fact that none of the claims was "adjudicated in favor of the

claimant was not material; if the [Borough's] efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims." See id.

During his deposition, Chief McNeill was questioned regarding civil rights actions in which Sergeant Galli was a defendant. (McNeill Dep., Dkt. 21-11, at 4.) When asked whether he had undertaken any investigation in connection with each of the five preceding incidents that culminated in the filing of suit, Chief McNeill indicated that he had not and neither had any other Exeter officials. (Id. at 4, 5.) Chief McNeill indicated that he does not maintain a file of the other lawsuits filed against the department, and the Borough did not produce any such file during discovery. (Id. at 8.)

Exeter Borough does not have any kind of policy providing guidance to its officers about how to obtain a warrant or when a warrantless entry in the middle of the night may or may not be justified. (Id. at 7, 13.) If a citizen were to make a complaint about an Exeter police officer, there is no written procedure in place. (Id.)

In addition to the lack of policies, there is a factual dispute regarding Galli and McNeill's relationship at their second job at the Woodlands. Chief McNeill testified that Galli is not his supervisor, did not hire him, and cannot fire him. (Id. at 15.) At an earlier deposition, however, Sergeant Galli indicated that he supervises other security guards, was in charge of Chief McNeill, and recommended that Chief McNeill receive the job.

These facts provide evidence that Exeter Borough's attitude with regard to constitutional claims asserted by citizens was one of indifference.  See Fiacco, 783 F.2d at 328.  A reasonable fact-finder could conclude that Chief McNeill and Exeter Borough had constructive knowledge that constitutional violations were being committed, but admittedly took no action to prevent or deter such actions from occurring.  Accordingly, Defendants' Motion for Summary Judgment as to Count III will be denied.

F.  Count IV - Trespass

"Pennsylvania defines the common law tort of trespass to land as the intentional entry upon land in the possession of another." Brady v. Cheltenham Twp., No. 97-4655, 1998 WL 164994, at *8 (E.D. Pa. Apr. 9, 1998).  Section 163 of the Restatement (Second) of Torts provides: "One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest." Corr. Med. Care, Inc. v. Gray, Civ. A. No. 07-2840, 2008 WL 248977, at *11 n.25 (E.D. Pa. Jan. 30, 2008) (quoting Restatement (Second) of Torts § 163).  Valid consent or a valid arrest warrant is a defense to an action in trespass.  See Bullick v. Colebrookdate Twp., Civ. A. No. 96cv1266, 1997 WL 587248, at *3 (E.D. Pa. Sept. 12, 1997); Brady, 1998 WL 164994, at *9; Lal v. CBS, Inc., 726 F.2d 97, 100 (3d Cir. 1984) ("[T]he consent of the person in possession of the property to the entry onto the premises is a complete defense to a trespass

action.").

As there is a question of material fact as to whether the porch is a vestibule to the apartments or part of Plaintiff's "single dwelling," and a question as to whether Plaintiff invited the officers upstairs while they were on the porch or the officers entered without permission, there is a genuine issue of material fact as to whether a trespass occurred. Accordingly, Plaintiff's Cross-Motion for Summary Judgment as it applies to Count IV of her Complaint will be denied.

### H. Count V - Intentional Infliction of Emotional Distress

Plaintiff has withdrawn her intentional infliction of emotional distress claim. (Pl. Opp. Br., Dkt. 24, at 6.) Accordingly, Count V of Plaintiff's Complaint will be dismissed.

### I. Punitive Damages

Punitive damages are assessed against individual state actors for the purposes of (1) visiting a punishment upon the defendant; (2) deterring defendants from violating the rights of others; and (3) encouraging private lawsuits to assert legal rights. Smith v. Wade, 461 U.S. 30, 58 (1983). "A jury may award punitive damages when it finds reckless, callous, intentional or malicious conduct." Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006). "'The defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.'" Id. (quoting Savarese v. Agriss, 883 F.2d 1194, 1204

21

(3d Cir. 1989)).  "The objective standard of 'callous or reckless indifference' that suffices for an award of punitive damages is not far removed from the standard for denying qualified immunity to the officers – whether a reasonable officer would have known that his conduct violated a clearly established constitutional right."  Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 873 (E.D. Pa. 2000).

Plaintiff seeks punitive damages from Defendants Galli and McNeill.  There is evidence in the record that could support a jury finding that Sergeant Galli acted recklessly when he entered and searched Plaintiff's residence.  Furthermore, there are facts to support a finding that Chief McNeill was recklessly indifferent to the violation of constitutional rights allegedly committed by Sergeant Galli.  It is for a jury to decide whether Sergeant Galli and Chief McNeill acted with the requisite motive and intent for punitive damages to be awarded.  Accordingly, summary judgment is not appropriate with respect to Plaintiff's claim for punitive damages against Sergeant Galli and Chief McNeill.

III.  Conclusion

Plaintiff's Cross Motion for Partial Summary Judgment will be denied.  Defendants' Motion for Partial Summary Judgment will be granted in part.  Plaintiff has voluntarily dismissed the intentional infliction of emotional distress claim.  Because there is an explicit constitutional text governing Counts I and II of Plaintiff's Complaint, the Fourteenth Amendment due process claims will be dismissed.  Plaintiff's remaining claims survive Defendants' Motion for Summary

Judgment.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA SALERNO                          :
                    Plaintiff          :
                                       :
        v.                             :          3:CV-07-2100
                                       :          (JUDGE VANASKIE)
LEONARD GALLI, EXETER BOROUGH,         :
JOHN MCNEILL, JOHN DOES 1 - 5          :
                    Defendants         :

ORDER

NOW THIS 7th DAY OF OCTOBER, 2009, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Partial Summary Judgment (Dkt. 18) is GRANTED IN PART.

Defendants' Motion for Partial Summary Judgment as it relates to the Fourteenth Amendment

claims in Counts I and II and as it relates to the intentional infliction of emotional distress claim

in Count V is GRANTED.  In all other respects, Defendants' motion is DENIED.

2. Plaintiff's Cross Motion for Partial Summary Judgment (Dkt. 26) is DENIED.

3. A telephonic scheduling conference will be held on Monday, November 2, 2009, at

1:30 p.m.  Plaintiff's counsel is responsible for placing the call to (570) 207-5720, and all

parties should be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge